United States District Court
Southern District of Texas
**ENTERED**
March 24, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ODELL BURGESS, TDCJ #579316, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-16-2470 |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice - Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

State inmate Odell Burgess has filed a Petition for a Writ of
Habeas Corpus By a Person in State Custody ("Petition")(Docket
Entry No. 1) and Petitioner Memorandum of Law on Points of Ground's
in Argument's to Support His 28 U.S.C. § 2254 Habeas Corpus
Application for Habeas Relief ("Petitioner's Memorandum") (Docket
Entry No. 6) seeking relief under 28 U.S.C. § 2254 from a state
court conviction.  The respondent has filed a Motion for Summary
Judgment with Brief in Support ("Respondent's MSJ") (Docket Entry
No. 14), along with a copy of the state court records (Docket Entry
Nos. 13, 22).  Burgess has filed Petitioner Response to
Respondent's Motion for Summary Judgment ("Petitioner's Response")
(Docket Entry No. 18).  After considering the pleadings, the state
court record, and the applicable law, the court will grant
Respondent's MSJ and will dismiss this action for the reasons
explained below.

## I.  **Background**

A local grand jury returned an indictment against Burgess in Harris County cause number 1376308, charging him with evading arrest or detention with a motor vehicle.[1]  The indictment was enhanced for purposes of punishment with allegations that Burgess had two prior felony convictions for aggravated robbery in 1991 and 1982.[2]  At trial the State presented evidence showing that Burgess attempted to evade arrest by fleeing in a motor vehicle after participating in a robbery.[3]  A jury in the 180th District Court of Harris County, Texas, found Burgess guilty as charged.[4]  After Burgess admitted that the enhancement allegations were "true," the same jury sentenced him to 53 years' imprisonment.[5]

On direct appeal Burgess challenged the sufficiency of the evidence and the admission of evidence about the extraneous robbery offense during the guilt-innocence phase of the trial, among other issues.[6]  An intermediate court of appeals rejected all of Burgess's claims and affirmed the conviction in a published opinion.  See Burgess v. State, 448 S.W.3d 589, 605 (Tex. App. —

---

[1]Indictment, Docket Entry No. 13-4, p. 16.

[2]Id.

[3]Court Reporter's Record, vol. 3, Docket Entry No. 13-9, pp. 8-88 (State's case-in-chief).

[4]Judgment of Conviction by Jury, Docket Entry No. 22-1, p. 28.

[5]Id.

[6]Appellant's Brief, Docket Entry No. 13-2, p. 7.

Houston [14th Dist.] 2014, no pet.).  In doing so, the court of appeals summarized the evidence presented at trial, which detailed Burgess's efforts to evade arrest following a robbery:

> According to the State's evidence, at approximately 6:30 p.m. on September 7, 2012, Houston police officer Marc Stallworth was seated in his police car at a business on the westbound feeder of the South Loop freeway.  He heard a "rush of air" from the freeway, which he associated with a speeding vehicle.  He noticed a black pickup truck, which was travelling westbound on the freeway, exit at Stella Link Road.  Officer Stallworth estimated the vehicle was travelling over 100 miles per hour.  [Burgess] was later identified as the driver, and there were two male passengers.  Officer Stallworth entered his police car and followed the truck.
>
> [Burgess] then used the Stella Link u-turn to begin travelling eastbound on the feeder.  After Officer Stallworth completed the u-turn, he activated his lights and siren.  At that point, he was four car lengths behind the truck, with no other vehicles in between.  [Burgess] immediately "floor[ed] it" — from about 45 miles per hour (his speed when making the u-turn) to about 65 miles per hour.  The occupants also threw items out of the truck onto the side of the feeder.  [Burgess]'s speed then varied between 50 to 65 miles per hour as he wove through traffic, with Officer Stallworth in pursuit, for approximately half a mile.  There were several side streets and businesses along the feeder where [Burgess] could have safely stopped, but he failed to do so.  He continued toward the next intersection — the feeder and South Main Street — where traffic was backed up at the light.
>
> [Burgess] turned into the parking lot of a service station located on the corner of that intersection.  He wove through vehicles in the lot and attempted to turn right onto South Main.  A constable who had observed the activity used his car to cut off the truck and forced it back into the parking lot.  [Burgess] then attempted to exit back onto the feeder but stopped when he was cut off by another police car that had joined the pursuit.  The officers ordered the occupants to exit the truck, and [Burgess] was arrested, without further incident.
>
> The State also presented evidence that, within twenty minutes before Officer Stallworth's pursuit, the

occupants of the truck committed a robbery, less than five miles from where they were eventually detained. Claudine James was seated in her vehicle in the parking lot of a post office when she saw another woman park her "two-seat" Mercedes and enter the post office. Then, a black pickup truck drove up and blocked the woman's car. A passenger (not [Burgess]) exited the truck, looked around, and entered the woman's car. A "child, a young girl" then "jumped" out of the car, screaming, with eyes as "big" as "plates." The man took a purse and cell phone from the car and re-entered the truck, and the driver left.

James followed the truck as it traveled at an extreme speed on the South Loop but eventually lost sight of it near the Stella Link exit. When James took that exit, she intended to alert Officer Stallworth whom she saw on the feeder, but he then activated his lights and u-turned. James did not observe Officer Stallworth's chase and next saw the truck when it had been stopped at the service station. James informed the officers about the robbery and identified [Burgess]'s truck as the one involved and one of his passengers as the man who entered the woman's car at the post office.

In the area where Officer Stallworth had observed the occupants throw items from the truck, officers found a purse and business cards belonging to the robbery victim. The officers' testimony indicated that a $100 bill found in one of the truck passenger's shoes was stolen in the robbery. The officers also found three new $100 bills in [Burgess]'s pocket.

Id. at 594-95. Burgess did not appeal further by filing a petition for discretionary review with the Texas Court of Criminal Appeals.[7]

Burgess challenged his conviction by filing an Application for a Writ of Habeas Corpus under Article 11.07 of the Texas Code of Criminal Procedure.[8]   In his Application Burgess argued that the

_____

[7]Respondent's Exhibit A, Docket Entry No. 15, p. 2.

[8]Application for a Writ of Habeas Corpus Seeking Relief From Final Felony Conviction Under Code of Criminal Procedure,

prosecutor committed error by introducing evidence of the extraneous robbery because he failed to present sufficient proof that Burgess committed the offense.[9] Burgess also argued that he was denied his constitutional right to confront and cross-examine witnesses.[10] Burgess also argued that he was denied effective assistance of counsel when his trial attorney:   (1) failed to request a limiting instruction regarding the extraneous robbery offense;  (2) advised him not to testify;  and (3) failed to investigate or interview the state's witnesses.[11] After considering an affidavit from Burgess's defense attorney,[12] the state habeas corpus court entered findings of fact and concluded that Burgess was not entitled to relief on any of his claims.[13] The Texas Court of Criminal Appeals agreed and denied relief without a written order on findings made by the trial court.[14]

Burgess has now filed a Petition for federal habeas corpus relief under 28 U.S.C. § 2254 from his conviction for evading

---

[9]Id. at 14-15.

[10]Id. at 16-19.

[11]Id. at 7-10, 16-17.

[12]Affidavit of Michael Slider ("Slider Affidavit"), Docket Entry No. 13-16, pp. 17-22.

[13]State's Proposed Findings of Fact, Conclusions of Law and Order After Remand ("FFCL"), Docket Entry No. 13-16, pp. 25-29.

[14]Action Taken, Writ No. 12,460-12, Docket Entry No. 13-11, p. 1.

arrest with a motor vehicle.[15]   He raises the same claims that were rejected on the merits on state habeas review.[16]   The respondent has filed a Motion for Summary Judgment, arguing that Burgess's claims are without merit and that relief is not warranted under the governing federal habeas corpus standard of review.[17]

## II.   Standard of Review

To the extent that the petitioner's claims were adjudicated on the merits in state court, his claims are subject to review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254(d).   Under the AEDPA a federal habeas corpus court may not grant relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States[.]"   28 U.S.C. § 2254(d)(1).   "A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts."   Matamoros v. Stephens, 783 F.3d 212, 215 (5th Cir. 2015)

---

[15]Petition, Docket Entry No. 1, p. 2.

[16]Id. at 7-19.

[17]Respondent's MSJ, Docket Entry No. 14.

-6-

(citations omitted); see also Williams v. Taylor, 120 S. Ct. 1495, 1519-20 (2002). To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting White v. Woodall, 134 S. Ct. 1697, 1702 (2014)). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011)).

The AEDPA "imposes a 'highly deferential standard for evaluating state-court rulings,' . . . [which] 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 130 S. Ct. 1855, 1862 (2010) (citations omitted). This standard is intentionally "difficult to meet" because it was meant to bar relitigation of claims already rejected in state proceedings and to preserve federal habeas review as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Richter, 131 S. Ct. at 786 (quoting Jackson v. Virginia, 99 S. Ct. 2781, 2796, n.5 (1979) (Stevens, J., concurring)); see also White, 134 S. Ct. at 1702.

-7-

A state court's factual determinations are also entitled to deference on federal habeas corpus review. Findings of fact are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness extends not only to express factual findings, but also to the state court's implicit findings. See Garcia v. Quarterman, 454 F.3d 441, 444-45 (5th Cir. 2006) (citing Summers v. Dretke, 431 F.3d 861, 876 (5th Cir. 2005); Young v. Dretke, 356 F.3d 616, 629 (5th Cir. 2004)). If a claim presents a question of fact, a petitioner cannot obtain federal habeas relief unless he shows that the state court's denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A federal habeas corpus court "may not characterize these state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" Brumfield v. Cain, 135 S. Ct. 2269, 2277 (2015) (quoting Wood v. Allen, 130 S. Ct. 841, 849 (2010)). "Instead, § 2254(d)(2) requires that [a federal court] accord the state trial court substantial deference." Id.

### III. Discussion

**A. Prosecutorial Error**

Burgess contends that the prosecutor committed error by introducing evidence of his participation in the extraneous robbery

because he failed to present sufficient proof that he committed the robbery.[18] The state court of appeals considered the admissibility of the extraneous offense evidence and concluded that it was properly admitted. See Burgess, 448 S.W.3d at 599-601. Likewise, the state habeas corpus court summarily denied relief on Burgess's claim of prosecutorial misconduct, concluding that he "failed to demonstrate that his conviction was improperly obtained."[19]

A claim of prosecutorial error or misconduct is actionable on federal habeas review only where the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 106 S. Ct. 2464, 2471 (1986) (quoting Donnelly v. DeChristoforo, 94 S. Ct. 1868, 1871 (1974)) (internal quotation marks omitted); accord Greer v. Miller, 107 S. Ct. 3102, 3109 (1987). Due process is not violated unless the alleged conduct deprived the petitioner of his right to a fair trial. Darden, 106 S. Ct. at 2471. "A trial is fundamentally unfair if 'there is a reasonable probability that the verdict might have been different had the trial been properly conducted.'" Foy v. Donnelly, 959 F.2d 1307, 1317 (5th Cir. 1992) (quoting Rogers v. Lynaugh, 848 F.2d 606, 609 (5th Cir. 1988) (citation omitted)).

The error alleged by Burgess concerns the admission of an extraneous offense. The introduction of extraneous offense

---

[18]Petition, Docket Entry No. 1, pp. 12, 14.

[19]FFCL, Docket Entry No. 13-16, p. 28.

-9-

evidence does not violate the Due Process Clause if the State
(1) makes "a strong showing that the defendant committed the
offense"; and (2) demonstrates that the extraneous offense is
"rationally connected with the offense charged." Enriquez v.
Procunier, 752 F.2d 111, 115 (5th Cir. 1984) (citation omitted);
accord Wood v. Quarterman, 503 F.3d 408, 414 (5th Cir. 2007); Story
v. Collins, 920 F.2d 1247, 1254 (5th Cir. 1991).

     As the court of appeals' opinion reflects, the State presented
substantial evidence showing that Burgess participated in the
robbery and was acting as the get-away driver when he committed the
charged offense of evading arrest with a motor vehicle. See
Burgess, 448 S.W.3d at 594-95. Addressing Burgess's challenge to
the admissibility of the extraneous offense evidence, the court of
appeals made the following additional findings that established
Burgess's role in the robbery offense and his motivation to
subsequently evade police:

> The challenged evidence was admitted via the testimony of
> police officers James Crowson and Marcus Ryans, who
> arrived at the service station after [Burgess]'s truck
> had been stopped, and the testimony of Claudine James.
> First, the officers collectively testified about the
> following facts supporting that the occupants of the
> truck committed a robbery: James's report of the robbery
> and identification of [Burgess]'s truck; the time and
> location of the robbery relative to Officer Stallworth's
> pursuit of the truck; and the discovery of the robbery
> victim's purse and business cards on the side of the road
> (Officer Stallworth having seen the truck's occupants
> throw items out) and her $100 bill in one of the
> passenger's shoes. Then, James provided the details of
> the incident at the post office described above. Based on
> all of this testimony, the trial court did not abuse its
> discretion by determining the jury could find beyond a
> reasonable doubt that [Burgess] committed robbery[.]

-10-

Id. at 600. Burgess does not dispute the state court's fact findings, which are amply supported by the record in this case.[20] Absent clear and convincing evidence to the contrary, the state court's findings are presumed correct. See 28 U.S.C. § 2254(e)(1); Moody v. Quarterman, 476 F.3d 260, 268 (5th Cir. 2007) (noting that the presumption of correctness that applies on federal habeas review "is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact") (quoting Sumner v. Mata, 102 S. Ct. 1303, 1304 (1982) (per curiam)) (citations omitted).

Because the State made a sufficiently strong showing that Burgess committed the extraneous robbery offense, which was plainly connected to the charged offense of evading arrest, Burgess fails to show that evidence of the robbery was admitted in violation of due process or that the state habeas corpus court erred by denying relief. Burgess does not otherwise show that relief is warranted under the federal habeas corpus standard of review. Accordingly, he is not entitled to relief on this claim under 28 U.S.C. § 2254(d).

## B.   The Right to Confront and Cross-Examine Witnesses

Burgess argues that he was denied his constitutional right to confront and cross-examine witnesses because he was not allowed to question the robbery victims, Ka-Ron and Destiny Wade, during the

---

[20]Court Reporter's Record, vol. 3, Docket Entry No. 13-9, pp. 8-88 (State's case-in-chief).

guilt-innocence phase of the trial.[21]   This claim, which was summarily rejected on state habeas review, has no merit.

The Confrontation Clause, which is found in the Sixth Amendment to the United States Constitution, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses <u>against</u> him."   U.S. CONST. amend. VI (emphasis added).   "Ordinarily, a witness is considered to be a witness 'against' a defendant for purposes of the Confrontation Clause only if his testimony is part of the body of evidence that the jury may consider in assessing his guilt." <u>Cruz v. New York</u>, 107 S. Ct. 1714, 1717 (1987).

The record confirms that Burgess had the opportunity to cross-examine each of the State's witnesses against him during the guilt-innocence phase of the trial.[22]   The respondent correctly notes that the State did not call Ka-Ron and Destiny Wade as witnesses during the guilt-innocence phase.   Rather, these witnesses testified during the punishment phase, where Burgess had the opportunity to cross-examine them.[23]

The Confrontation Clause does not require the prosecution to call all adverse witnesses at the defendant's trial.   <u>See</u>

_____

[21]Petition, Docket Entry No. 1, pp. 17-19.

[22]Court Reporter's Record, vol. 3, Docket Entry No. 13-9, pp. 31-51 (Officer Stallworth), 60-62 (Officer Crowson), 65-69 (Officer Childress), 72-75 (Officer Ryans), 81-84 (Claudine James), 86-87 (Claudine James, recross-examination).

[23]<u>Id.</u> at 115-27.

-12-

McAllister v. Brown, 555 F.2d 1277, 1278 (5th Cir. 1977); see also United States v. Morgan, 757 F.2d 1074, 1076 (10th Cir. 1985) (observing that the Confrontation Clause "is not a guarantee that the prosecution will call all the witnesses it has against the defendant"); United States v. Bryant, 461 F.2d 912, 916 (6th Cir. 1972) ("The Sixth Amendment right of confrontation does not impose upon the Government the duty to call a particular witness.") (citation omitted).   The Confrontation Clause is not implicated where the witness neither testifies nor provides evidence at trial. See United States v. Porter, 764 F.2d 1, 9 (1st Cir. 1985) (citations omitted); see also Garcia v. Bravo, 199 F. App'x 692, 694 (10th Cir. 2006) (observing that the constitutional right to confront witnesses "attaches only to those witnesses who actually testify against the defendant").   Because the State did not call Ka-Ron or Destiny Wade during the guilt/innocence phase of the trial, Burgess's contention that he was deprived of the right to confront or cross-examine them until the punishment proceeding has no merit. See Cooper v. California, 87 S. Ct. 788, 791 n.2 (1967) (commenting that any "contention . . . that (petitioner) was unconstitutionally deprived of the right to confront a witness against him, because the State did not produce the informant to testify . . . we consider absolutely devoid of merit").

Burgess makes no effort to show that the state habeas corpus court's decision to reject his Confrontation Clause claim was contrary to or an unreasonable application of clearly established

Supreme Court precedent.  Accordingly, he is not entitled to relief under 28 U.S.C. § 2254(d) on this claim.

## C.   Ineffective Assistance of Counsel at Trial

Burgess alleges that he was denied effective assistance of counsel at his trial because his defense attorney:  (1) failed to request a limiting instruction regarding the extraneous robbery offense;  (2) advised him not to testify;  and (3) failed to investigate or interview state's witnesses.[24]  The state habeas corpus court rejected these claims, concluding that the "totality of the representation [that Burgess received] was sufficient to afford [him] reasonably effective assistance of counsel [at] trial."[25]

Claims for ineffective assistance of counsel are governed by the standard found in Strickland, 104 S. Ct. at 2064.  To prevail under the Strickland standard a defendant must demonstrate (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense.  Id.  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  Id.

"To satisfy the deficient performance prong, 'the defendant must show that counsel's representation fell below an objective

_____

[24]Petition, Docket Entry No. 1, pp. 7-12, 15-16.

[25]FFCL, Docket Entry No. 13-16, p. 28.

-14-

standard of reasonableness.'" <u>Hoffman v. Cain</u>, 752 F.3d 430, 440 (5th Cir. 2014) (quoting <u>Strickland</u>, 104 S. Ct. at 2064), <u>cert. denied</u>, 135 S. Ct. 1160 (2015). This is a "highly deferential" inquiry; "[t]here is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" <u>Id.</u> (quoting <u>Strickland</u>, 104 S. Ct. at 2065).

To satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. A habeas petitioner must "affirmatively prove prejudice." <u>Id.</u> at 693. A petitioner cannot satisfy the second prong of <u>Strickland</u> with mere speculation and conjecture. <u>See</u> <u>Bradford v. Whitley</u>, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to demonstrate either deficient performance or actual prejudice. <u>See</u> <u>Day v. Quarterman</u>, 566 F.3d 527, 540-41 (5th Cir. 2009); <u>see also</u> <u>Lincecum v. Collins</u>, 958 F.2d 1271, 1279-80 (5th Cir. 1992) (stating that an ineffectiveness claim based on speculation or conclusional rhetoric will not warrant relief).

Because Burgess's ineffective-assistance claims were rejected by the state court, the issue is not whether this court "'believes the state court's determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" <u>Knowles v. Mirzayance</u>, 129 S. Ct. 1411, 1420 (2009) (quotation omitted). In addition,

-15-

Case 4:16-cv-02470 Document 23 Filed in TXSD on 03/24/17 Page 16 of 28

"because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." <u>Id.</u> When applied in tandem with the highly deferential standard found in 28 U.S.C. § 2254(d), review of ineffective-assistance claims is "doubly deferential" on habeas corpus review. <u>Id.</u> at 1413; <u>see also</u> <u>Richter</u>, 131 S. Ct. at 788 (emphasizing that the standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted); <u>Beatty v. Stephens</u>, 759 F.3d 455, 463 (5th Cir. 2014), <u>cert. denied</u>, 135 S. Ct. 2312 (2015) (same).

### 1. Failure to Request Limiting Instruction

Burgess contends that his counsel was deficient because he failed to request a limiting instruction regarding the extraneous robbery offense before evidence of that offense was admitted at trial.[26] In response to this allegation Burgess's defense attorney explained his affidavit to the state habeas corpus court that he did not request a verbal instruction from the trial court concerning the extraneous robbery offense for two reasons: (1) he did not want to highlight or bring the jury's attention to this evidence as it was being admitted; and (2) he observed that the proposed jury charge included instructions limiting the use of extraneous offenses unless proven by the State beyond a reasonable

---

[26]Petition, Docket Entry No. 1, pp. 7, 8-9.

-16-

doubt.[27]  Noting that trial counsel made sure that the jury charge
contained instructions on the limited use and the State's burden of
proof for extraneous offense evidence, the state habeas corpus
court found that counsel made a "strategic decision" not to request
a verbal instruction on these issues at the time the evidence was
admitted "to avoid calling this evidence to the jury's attention,"
which was not unreasonable.[28]

     Strategic decisions made by counsel during the course of trial
are entitled to substantial deference in the hindsight of federal
habeas review.  See Strickland, 466 U.S. at 689 (emphasizing that
"[j]udicial scrutiny of counsel's performance must be highly
deferential" and that "every effort [must] be made to eliminate the
distorting effects of hindsight").  A federal habeas corpus court
may not find ineffective assistance of counsel merely because it
disagrees with counsel's chosen trial strategy.  Crane v. Johnson,
178 F.3d 309, 312 (5th Cir. 1999).  Thus, "[a] conscious and
informed decision on trial tactics and strategy cannot be the basis
for constitutionally ineffective assistance of counsel unless it is
so ill chosen that it permeates the entire trial with obvious
unfairness."  Green v. Johnson, 116 F.3d 1115, 1122 (5th Cir.
1997); Garland v. Maggio, 717 F.2d 199, 206 (5th Cir. 1983) (citing
Fitzgerald v. Estelle, 505 F.2d 1334 (5th Cir. 1975); Daniels v.
Maggio, 669 F.2d 1075 (5th Cir. 1982)).

---

[27]Slider Affidavit, Docket Entry No. 13-16, p. 18.

[28]FFCL, Docket Entry No. 13-16, p. 26.

The record confirms that the trial court instructed the jury verbally and in writing before the start of summation and deliberation on the limited use and the State's burden of proof on extraneous offense evidence.[29] For reasons explained above, Burgess has not shown that evidence of the extraneous robbery offense was improperly admitted. Burgess also fails to show that his counsel's strategic decision to avoid calling further attention to this damaging evidence was deficient or that the state habeas corpus court's decision was unreasonable under the doubly deferential standard that applies on federal habeas review. Therefore, Burgess is not entitled to relief on this claim.

2.    Advising Burgess Not to Testify

Burgess contends that his counsel was deficient because he advised Burgess not to testify.[30] Burgess acknowledges that he has a lengthy criminal record of prior convictions,[31] which includes the following:  aggravated robbery - serious bodily injury in 1991; aggravated robbery - serious bodily injury in 1982; forgery in 1982; burglary, theft (two counts), credit card abuse, and burglary of a motor vehicle in 1977; and another burglary in 1976.[32]  Prior

---

[29]Jury Instructions, Docket Entry No. 22-1, pp. 13-14; Court Reporter's Record, vol. 3, Docket Entry No. 13-9, p. 92.

[30]Petition, Docket Entry No. 1, pp. 7, 10-11; Petitioner's Memorandum, Docket Entry No. 6, pp. 6-9.

[31]Petition, Docket Entry No. 1, p. 6; Petitioner's Memorandum, Docket Entry No. 6, p. 10.

[32]State's Notice of Intention to Use Evidence of Prior Convictions and Extraneous Offenses, Docket Entry No. 13-4, pp. 30-31.

unadjudicated offenses include: aggravated assault in 1991; assault causing bodily injury in 1990; robbery in 1981; aggravated robbery with a deadly weapon in 1981; passing forged checks (two counts) and theft in 1977.[33] The State had given notice that it would introduce these convictions and other extraneous offenses, including the robbery of Dr. Ka-Ron Wade, during the punishment phase and for purposes of impeachment if Burgess elected to testify.[34] Noting that some of the prior convictions were more than ten years' old and that defense counsel could have filed a motion in limine under <u>Theus v. State</u>, 845 S.W.2d 874 (Tex. Crim. App. 1992) (a "<u>Theus</u> motion") that would have allowed him "to testify at the guilt stage of the trial 'free' from impeachment,"[35] Burgess

---

[33]<u>Id.</u>

[34]<u>Id.</u>

[35]A defendant who testifies "places his credibility at issue and may thereafter be impeached like any other testifying witness." <u>Geuder v. State</u>, 142 S.W.3d 372, 375 (Tex. App. — Houston [14th Dist.] 2004, pet. ref'd) (citation omitted). Under Rule 609 of the Texas Rules of Evidence, evidence that a witness has been convicted of a felony or a crime of moral turpitude is admissible for purposes of attacking his credibility if the trial court determines "the probative value of the evidence outweighs its prejudicial effect to a party." TEX. R. EVID. 609(a)(2). In <u>Theus v. State</u>, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992), the Texas Court of Criminal Appeals set forth five non-exclusive factors for evaluating whether the probative value of evidence outweighs its prejudicial effect for purposes of Rule 609, including: (1) the impeachment value of the prior offense; (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history; (3) the similarity between the past crime and the offense being prosecuted; (4) the importance of the defendant's testimony; and (5) the importance of the credibility issue. In a <u>Theus</u> motion a defendant essentially asks the trial court to weigh these factors and rule in advance that he is entitled to testify free from
(continued...)

contends that his attorney's advice was deficient and deprived him of his constitutional right to testify.[36]

In his affidavit to the state habeas corpus court, defense counsel explained that he discussed a defendant's "absolute right" to testify with Burgess and the possibility that he would be impeached with prior felony convictions if he did.[37] Defense counsel was not concerned about the State impeaching Burgess with his older convictions, but he was particularly concerned about Burgess's aggravated robbery conviction from 1991, which resulted in a 99-year prison sentence, because Burgess was on parole for that offense when he was charged with evading arrest.[38] As a result, Burgess could be impeached with that prior conviction.[39] Defense counsel explained that he did not consider filing a Theus motion because Burgess informed him "early" in the case that he did not want to testify because he had no explanation for his actions on the day of the offense.[40]

---

[35](...continued)
impeachment by evidence of a prior conviction. See Cisneros v. State, 290 S.W.3d 457, 468 (Tex. App. — Houston [14th Dist.] 2009, pet. dism'd) (describing the Theus procedure as a motion to testify "free of impeachment"); Hensley v. State, 2015 WL 6081798, *2 (Tex. App. — Houston [1st Dist.] 2015, no pet.) (unpublished) (same).

[36]Petitioner's Memorandum, Docket Entry No. 6, p. 8.

[37]Slider Affidavit, Docket Entry No. 13-16, at 19.

[38]Id. at 19-20.

[39]Id.

[40]Id.

The state habeas corpus court found that Burgess was accurately informed by his defense counsel that he could be impeached with his prior felony aggravated robbery conviction from 1991, for which he received a 99-year sentence and was still on supervised release, because Burgess had not been out of confinement for more than ten years since he was released from custody for that conviction.[41]   See TEX. R. EVID. 609(b).[42]   The state habeas corpus court also found that Burgess expressly informed his defense counsel that "he did not want to testify because he did not have any explanation for the circumstances surrounding the evading offense."[43]   Finding further that Burgess "clearly indicated that his desire not to testify was due to reasons unrelated to any concern over being impeached with his prior felony convictions," the state habeas corpus court implicitly concluded that defense counsel's failure to file a Theus motion was reasonable and that Burgess was not denied the right to testify as a result of his counsel's deficient performance.[44]

---

[41]FFCL, Docket Entry No. 13-16, pp. 26-27.

[42]Rule 609(b) of the Texas Rules of Evidence, which limits the use of prior convictions for impeachment, "applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later."   TEX. R. EVID. 609(b). Evidence of a prior conviction that exceeds the 10-year time limit "is admissible only if its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect."   Id.

[43]FFCL, Docket Entry No. 13-16, p. 27.

[44]Id. at 27, 28.

"A criminal defendant has a fundamental constitutional right to testify on his own behalf." Jordan v. Hargett, 34 F.3d 310, 312 (5th Cir. 1994) (citing Rock v. Arkansas, 107 S. Ct. 2704, 2708-10 (1987)). "This right is granted to the defendant personally and not to his counsel." See id. (citing Rock, 107 S. Ct. at 2709). The Fifth Circuit has recognized that a defendant may waive his right to testify, and that defendants frequently do so on the advice of counsel. See id. Thus, there is no violation of the right to testify where the defendant merely acquiesced during trial to his attorney's recommendation that he not testify, even if the defendant decides later, in hindsight, that he should have testified. See id. Instead, a violation of this right occurs only "if the 'final decision that [the defendant] would not testify was made against his will.'" Id. (quoting United States v. Teague, 908 F.2d 752, 759 (11th Cir. 1990)).

Burgess acknowledged at trial that his counsel had advised him of his right to testify.[45] Burgess stated that he understood that he had the right to testify, but elected not to on the advice of counsel.[46] Because the state habeas corpus court found that Burgess clearly indicated he did not wish to testify for reasons unrelated to the potential for impeachment with his prior felony convictions, Burgess must present clear and convincing evidence to overcome the

---

[45]Court Reporter's Record, vol. 3, Docket Entry No. 13-9, pp. 128-29.

[46]Id. at 129.

-22-

presumption of correctness attributed to this finding.   <u>See</u> 28 U.S.C. § 2254(e)(1).   Other than the allegations in his pleadings, Burgess presents no evidence that he ever expressed a desire to testify.[47]   This is not sufficient to show that Burgess was denied his constitutional right to testify.   <u>See</u> <u>Underwood v. Clark</u>, 939 F.2d 473, 476 (7th Cir. 1991) (holding that a habeas petitioner "must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer . . . forbade him to take the stand").

To the extent that Burgess chose  not to testify based on his counsel's advice, he cannot show that he was denied his constitutional right to testify.   <u>See</u> <u>Jordan</u>, 34 F.3d at 312. Likewise, Burgess does not dispute that he committed the charged offense of evading arrest with a motor vehicle while on parole from his 1991 aggravated robbery conviction and that his testimony would have been subject to impeachment for that offense as well as the extraneous robbery that he participated in immediately before he attempted to evade police.   Based on this record, Burgess has not shown that his counsel's advice was constitutionally deficient.

Even assuming <u>arguendo</u> that counsel was somehow deficient for interfering with Burgess's right to testify, Burgess fails to demonstrate actual prejudice.   Burgess does not provide any information about what testimony he would have given.   In light of

---

[47]<u>See</u> Petition, Docket Entry No. 1, p. 10; Petitioner's Memorandum, Docket Entry No. 6, p. 6.

the substantial evidence against him, Burgess fails to otherwise show how his testimony would have made a difference in the outcome of the proceedings. See Sayre v. Anderson, 238 F.3d 631, 635 (5th Cir. 2001) ("Considering the overwhelming evidence of [defendant's] guilt, we cannot conceive of anything [defendant] could have said that would have provided *any* reasonable possibility of a different outcome."); see also United States v. Mullins, 315 F.3d 449, 456-57 (5th Cir. 2002) (holding that, even where a counsel's performance was found deficient for failing to honor his client's request to testify, there was no valid ineffective-assistance claim absent a showing of actual prejudice); United States v. Willis, 273 F.3d 592, 598-99 (5th Cir. 2001) (same).

Burgess has not established that his counsel's performance was deficient with regard to his right to testify or that he was actually prejudiced as a result. Absent a showing of deficient performance or actual prejudice, Burgess fails to demonstrate a valid claim of ineffective assistance of counsel in connection with his right to testify. To the extent that the state court rejected his claim, Burgess does not show that this decision was unreasonable under the doubly deferential standard of review. Accordingly, he is not entitled to federal habeas corpus relief on this claim.

### 3.   Failure to Investigate State's Witnesses

Burgess contends that his counsel was deficient because he failed to investigate or interview three witnesses who testified

-24-

for the State, including Officer Stallworth, Judge Claudine James, and Dr. Ka-Ron Wade, which Burgess contends "could have allowed the defense to establish a reasonable doubt."[48]  In response to this allegation, defense counsel explained that he did not attempt to interview Officer Stallworth because, based on his experience, Houston police officers are generally not willing to be interviewed by defense attorneys.[49]  Likewise, he did not attempt to interview Claudine James or Ka-Ron Wade because he did not believe there was any benefit, noting that neither witness positively identified Burgess as the driver of the vehicle.[50]  The state habeas corpus court made findings consistent with defense counsel's affidavit and concluded that Burgess failed to show that he was denied effective assistance as the result of his counsel's alleged failure to investigate.[51]

A habeas corpus petitioner who alleges a failure to investigate on the part of his counsel "must allege <u>with specificity</u> what the investigation would have revealed and how it would have altered the outcome of the trial." <u>United States v. Bernard</u>, 762 F.3d 467, 472 (5th Cir. 2014) (citation omitted) (emphasis added); <u>accord</u> <u>Miller v. Dretke</u>, 420 F.3d 356, 361 (5th Cir. 2005).  The record reflects that defense counsel capably

---

[48]Petition, Docket Entry No. 1, p. 12; Petitioner's Memorandum, Docket Entry No. 6, pp. 13-16.

[49]Slider Affidavit, Docket Entry No. 13-16, p. 20.

[50]<u>Id.</u> at 21.

[51]FFCL, Docket Entry No. 13-16, pp. 27-28.

cross-examined Officer Stallworth, Judge James, and Dr. Wade at trial.[52] Burgess does not suggest what other questions his counsel could have asked, what additional investigation would have shown, or how it would have benefitted his defense.  His conclusory allegations are insufficient to show that counsel's investigation was deficient for failing to interview the witnesses or that Burgess was prejudiced.  See Day, 566 F.3d at 540-41; see also Lincecum, 958 F.2d at 1279 (denying habeas relief where petitioner "offered nothing more than the conclusory allegations in his pleadings" to support claim that counsel was ineffective for failing to investigate and present evidence).  Absent a showing of both deficient performance and actual prejudice, Burgess does not show that he was denied effective assistance of counsel because of his attorney's alleged failure to investigate or that the state court's decision was unreasonable under the circumstances.  Accordingly, he is not entitled to relief on this claim.

Because Burgess has failed to establish a valid claim for relief, Respondent's Motion for Summary Judgment will be granted and the Petition will be denied.

## IV.  Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when

---

[52]Court Reporter's Record, vol. 3, Docket Entry No. 13-9, pp. 31-51 (Officer Stallworth), 81-84 (Judge Claudine James), 86-87 (Judge Claudine James, recross-examination), 121-23 (Dr. Ka-Ron Wade).

entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)). Under the controlling standard this requires a petitioner to show "'that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encourage-ment to proceed further."'" Miller-El v. Cockrell, 123 S. Ct. 1029, 1039 (2003). Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." Slack, 120 S. Ct. at 1604.

A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Because the

petitioner does not demonstrate that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## V.   Conclusion and Order

The court **ORDERS** as follows:

1.   Respondent's Motion for Summary Judgment (Docket Entry No. 14) is **GRANTED**.

2.   Odell Burgess's Petition for a Writ of Habeas Corpus By a Person in State Custody (Docket Entry No. 1) is **DENIED**, and this action will be dismissed with prejudice.

3.   A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 24th day of March, 2017.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE